IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MISSOURI DRYWALL SUPPLY INC, USA, FOR THE USE AND BENEFIT OF MISSOURI DRYWALL SUPPLY INC.; | |
| Plaintiff, | No. 6:17-03408-CV-RK |
| v. | |
| COMMERCIAL DRYWALL CORPORATION, | |
| Defendant. | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court is Plaintiff Missouri Drywall Supply, Inc. ("Plaintiff")'s Motion for Default Judgment against Defendant Commercial Drywall Corporation ("Defendant"). (Doc. 55.) For the reasons below, the Motion for Default Judgment (Doc. 55) is **GRANTED**.

I. **Background**

This action is brought pursuant to the Miller Act, 40 U.S.C. § 3131, *et seq.*[1] (Doc. 42.) Actions brought pursuant to the Miller Act apply the law of the forum state; therefore, Missouri law applies to the claims alleged in the Complaint. *See United States use of Lichter v. Henke Const. Co.*, 157 F.2d 13, 29 (8th Cir. 1946) ("[w]hile the present action is brought under a federal statute [the Miller Act], it is in the nature of an action on contract and the construction of the federal statute is not involved . . . the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938) . . . is applicable here"). A subcontractor must plead a state law claim in addition to bringing a cause of action under the Miller Act if the subcontractor seeks recovery of contract damages. *United States ex rel. Yonker Constr. Co. v. Westering Contracting Corp.*, 935 F.2d 936, 940-42 (8th Cir. 1991) (the court allowed the subcontractor to recover contractual damages because the subcontractor

---

[1] The Miller Act requires contractors on federal government construction projects to post bonds that guarantee payment for subcontractors supplying materials. 40 U.S.C. § 3131. Before a contract is awarded, the contractor must provide the government with a performance bond issued by a surety. *Id.*

1

pled a state law claim in addition to its claim under the Miller Act). *See also Consolidated Elec. & Mechs., Inc. v. Biggs Gen. Contr., Inc.*, 167 F.3d 432, 435 (8th Cir. 1999) (the subcontractor brought an action against defendant under the Miller Act but did not raise a state law claim against defendant for breach of contract, so the court held the subcontractor was not entitled to contract damages for its breach of contract claim). Here, Plaintiff's Complaint alleges the following claims against Defendant under Missouri law: Count I: Breach of Contract; Count II: Quantum Meruit; and Count III: Unjust Enrichment. Plaintiff now seeks a default judgment on Counts I, II, and III of the Complaint with damages in the amount of $79,587.74 plus pre and post-judgment interest.

### A. Facts Alleged in the Complaint

On or about December 14, 2014, the United States of America, acting by and through the United States Corps of Engineers, entered into a written contract with Zieson Construction Company LLC ("Zieson"). The contract was for the furnishing of labor and materials necessary for construction of a dining facility for Fort Leonard Wood in Fort Leonard Wood, Missouri. The project was known as Contract W912DQ-15-C-400, AIT Complex II Dining Facility, Fort Leonard Wood Mo., hereinafter referred to as "the project." Zieson acted as principal, and Fidelity & Deposit Company of Maryland ("Fidelity") acted as surety. Zieson contracted with Defendant to provide labor and materials for the project. Both Zieson and Fidelity were dismissed from this action prior to this motion.

As a result of the contract between Zieson and Defendant, Defendant hired Plaintiff as a subcontractor to provide labor and materials for the project. The labor and material costs from the arrangement between Plaintiff and Defendant are contained as invoices in Plaintiff's Exhibit 2. (Doc. 42-2.) Between November 20, 2015, and December 29, 2016, Plaintiff supplied all materials and labor pursuant to its contract with Defendant. Plaintiff alleges Defendant breached its contract with Plaintiff by failing and refusing to pay Plaintiff the remaining sum of $79,587.74 for labor and materials supplied by Plaintiff.

### B. Procedural Background

On January 18, 2018, a return of service was filed in the Court's electronic filing system, and the return of service indicated that Defendant was served with the Complaint on December 28, 2017. (Doc. 15.) Defendant's Answer was due on or before January 18, 2018. (*Id.*) On September 19, 2018, Plaintiff filed a request for Clerk's Entry of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 53.) A Clerk's Entry of Default against Defendant

was entered on September 20, 2018. (Doc. 54.) Plaintiff then filed the instant Motion for Default Judgment on September 21, 2018. (Doc. 55.) On October 17, 2018, the Court issued an Order directing Plaintiff to supplement its Motion for Default Judgment with additional documentation to allow the Court to conduct an accounting. (Doc. 56.) On October 30, 2018, Plaintiff filed a Supplement. (Doc. 57.) On December 6, 2018, the Court asked Plaintiff to file a Supplement addressing personal jurisdiction over Defendant. On January 17, 2019, Plaintiff filed a Supplement. (Doc. 58.)

### C. Personal Jurisdiction

A Court has an affirmative duty to ensure personal jurisdiction exists over a defendant before entering a default judgment against that defendant. *Metro. Cas. Ins. Co. v. Combs*, 2014 U.S. Dist. LEXIS 32594, at * (E.D. Mo. Mar. 13, 2014); 10 Moore's Federal Practice - Civil § 55.31 (2018). There are two types of personal jurisdiction, specific and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction over a defendant exists if the defendant "has purposefully directed [its] activities at [Missouri] residents in a suit that arises out of or relates to these activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (quotation marks and citations omitted). The relationship between the defendant and the forum state "must arise out of contacts that the defendant himself creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (quotation marks and citations omitted). If a defendant reaches out to a party in the forum state to make agreements or business relationships and the resulting litigation arises from these contacts, the defendant has purposefully availed itself to suit in that forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Additionally, a defendant purposefully avails itself to the forum state when that defendant executes a contract for goods and services to be delivered in the forum state because the defendant has invoked the benefits and protections of the forum state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("where a defendant deliberately has engaged in significant activities within a state . . . or has created continuing obligations between himself and residents of the forum . . . he manifestly has availed himself to the privilege of conducting business there . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well") (internal citations and quotations omitted).

Here, specific personal jurisdiction exists over Defendant. Defendant has purposefully directed its activities at Missouri because: (1) the contract between Plaintiff and Defendant was

3

executed in Missouri, (2) the contract required Plaintiff to supply labor and materials to Defendant at the project site located in Missouri over a period of time, (3) the contract required Defendant to make payments to Plaintiff who was based in Missouri, and (4) the contract required Defendant to maintain a continued relationship with Missouri. In similar circumstances, the Eighth Circuit found sufficient minimum contacts existed over the defendant. *See K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595-96 (8th Cir. 2011) (the court held sufficient minimum contacts existed to exercise specific personal jurisdiction over the defendant because:

> The parties here (1) had a long-term product development contract that would require Uriach to have a continuing relationship with Missouri; (2) the parties engaged in a face-to-case meeting in Missouri to negotiate an amendment to their contract; (3) the contract terms governing the sale and delivery of Flutrimazole required Uriach to ship the drug to Missouri; and (4) Uriach made payments to KV, which is based in Missouri.

Here, the suit arises from Defendant's activities in Missouri because the suit concerns Defendant's alleged nonpayment of labor and materials contrary to the contract's terms. Because this Court has specific jurisdiction over Defendant, personal jurisdiction is satisfied.

**II.     Standard**

An entry of default from the Clerk of the Court pursuant to Federal Rule of Civil Procedure 55(a) is a prerequisite to a default judgment under Rule 55(b). *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). "A default judgment entered by the court binds the party facing the default as having admitted all of the well-pleaded allegations in the plaintiff's complaint." *Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citation omitted).

Before entering default, the Court must analyze the facts alleged in the Complaint to ensure liability is satisfied. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement and Concrete Workers Dist. Council Welfare Fund, v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2nd Cir. 2012). Under Rule 55(b)(2), "the party must apply to the court for a default judgment . . . the court may conduct hearings or make referrals . . . when, to enter judgment, it needs to conduct an accounting or determines the amount of damages." "The need for a hearing is within the sound discretion of the district court under Fed. R. Civ. P. 55(b)(2)(B)." *Stephenson*, 524 F.3d at 916 (citation omitted); *see e.g., J &*

4

*J Sports Prods., Inc. v. Acevedo*, 2010 WL 1980849, at *1 (E.D. Ark. May 13, 2010) ("No hearing on substantive issues is necessary if the evidence sufficient to justify a default judgment is already before the court.") Finally, the party applying for default is not required to notify the defaulting party if the defaulting party has not appeared in the action. Fed. R. Civ. P. 55(b)(2).

## III. Discussion

Plaintiff alleges three causes of action in the Complaint: breach of contract, quantum meruit, and unjust enrichment.

### A. Count I: Breach of Contract

Default judgment in favor of Plaintiff is appropriate under Count I. Plaintiff has plead facts which are taken as true for the purposes of the motion and satisfied the elements to maintain a breach of contract action. Under Missouri law, to establish a breach of contract action, the moving party must prove the following elements: "'(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by defendant; and (4) damages suffered by the plaintiff.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). The Court finds that taking the well-plead allegations as true, all elements to prove breach of contract are satisfied. First, a contract existed between Plaintiff and Defendant. Next, Plaintiff performed under that contract by providing labor and materials to Defendant for the project. Third, Defendant has not paid Plaintiff in full as provided in the contract. Finally, Plaintiff has suffered damages as a result of Defendant's nonpayment. Based on the foregoing, Defendant is liable to Plaintiff in its breach of contract claim in Count I of the Complaint.

### B. Count II: Quantum Meruit

Default judgment in favor of Plaintiff is appropriate under Count II. To succeed on a quantum meruit claim, the plaintiff must prove the following elements: (1) "plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant;" (2) "that the materials or services had reasonable value;" and (3) "that the defendant, despite the demands of plaintiff, has failed and refused to pay the reasonable value of such materials or services." *Cnty. Asphalt Paving, Co., Inc. v. Mosley Const., Inc.*, 239 S.W.3d 704, 710 (Mo. App. 2007) (citation and internal quotations omitted). The Court, taking the well-plead allegations in Plaintiff's Complaint as true, finds all elements are satisfied. First, Plaintiff provided Defendant with labor and materials for the project. Next, Plaintiff has provided sufficient

5

supplemental documentation to the Court proving the labor and materials had a reasonable monetary value. In particular, Plaintiff's supplement to the Motion for Default Judgment provides evidence in support of the damages. (*See* Doc. 57-1) ("Missouri Drywall supplied the materials set forth in Plaintiff's Exhibit '2' attached to its First Amended Complaint which had a value of $228,056.44 . . . Commercial Drywall paid $148,468.70 for materials supplied by Missouri Drywall to the project . . . Missouri Drywall is owed $79,587.74 from Commercial Drywall."). These materials describe the nature of the agreement between Plaintiff and Defendant, provide all invoice for Defendant's purchases of labor and materials from Plaintiff, summarize these invoices, and provide what invoices remain unpaid. Last, Plaintiff has demanded payment for remaining labor and material invoices, but Defendant has not paid the reasonable value of the labor and materials. Accordingly, Defendant is liable to Plaintiff in its quantum meruit claim in Count II of the Complaint.

    **C.**    **Count III: Unjust Enrichment**

Default judgment in favor of Plaintiff is appropriate under Count III. To succeed on an unjust enrichment claim, the plaintiff must prove the following elements: (1) "it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust." *AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. App. 2015). The Court, taking the well-plead allegations in Plaintiff's Complaint as true, finds all elements for unjust enrichment are satisfied. First, Plaintiff conferred a benefit on Defendant by providing labor and materials for the project. Next, Defendant appreciated the benefit because Defendant used the provided labor and materials in the construction of the project. Last, Defendant retained the benefit without payment to Plaintiff for the labor and materials, thus the benefit was retained under inequitable circumstances. Accordingly, Defendant is liable to Plaintiff in its unjust enrichment claim in Count III of the Complaint.

    **D.**    **Default Judgment**

Default judgment pursuant to Rule 55(b)(2) is appropriate. Pursuant to Rule 55(b)(2), the Court may hold hearings to "conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter." However, the court is not required to conduct any evidentiary proceeding if evidence before the Court is sufficient for entry of default judgment. *J & J Sports Prods., Inc.*, 2010 WL 1980849, at *1. *See also Taylor v.*

6

*Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (court need not hold evidentiary hearing when damages can be computed on basis of facts of record). With the benefits of Plaintiff's Supplements to the Motion for Default Judgment, the evidence before the Court is sufficient to enter default judgment against Defendant, and evidentiary proceedings are not necessary. Defendant is in default and has not provided any dispute as to the amount claimed in Plaintiff's Proposed Entry of Default (Doc. 55-3). After reviewing the documents provided by Plaintiff, the Court finds the documents provide sufficient evidence to enter default judgment against Plaintiff without an evidentiary hearing.

E. **Damages**

1. **Interest**

Plaintiff seeks prejudgment and post-judgment interest in the statutory amount beginning February 6, 2017, until this judgment is satisfied. The Miller Act does not expressly provide for interest; therefore, the law of the forum state is applied to determine the applicable interest rate. *United States of America ex rel. Butler Supply, Inc., v. Power & Data, LLC*, 2014 WL 7271986, at *1 (E.D. Mo. Dec. 18, 2014).

RSMo. § 408.020 governs prejudgment interest, and when this statue applies, the court is compelled to award prejudgment interest. *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co.*, 735 F.3d 993, 1005 (8th Cir. 2013). RSMo. § 408.020 applies and prejudgment interest must be awarded if the following requirements are met: "(1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim must be readily ascertainable; and (3) the obligee must make a demand of the obligor for the amount due." *Lucent Techs., Inc. v. Mid-West Elecs., Inc.*, 49 S.W.3d 236, 246 (Mo. App. 2001). Prejudgment interest accrues when the principal payment is due to Plaintiff and ceases when the court enters judgment. *United States of America ex rel. Butler Supply, Inc., LLC*, 2014 WL 7271986, at *1. If the parties do not have an agreement otherwise as to prejudgment interest, the prejudgment interest rate of nine percent per annum applies as directed in RSMo. § 408.020. *Unerstall Founds., Inc. v. Corley*, 328 S.W.3d 305, 314 (Mo. App. 2010).

Here, an award of prejudgment interest at nine percent per annum is proper. First, Plaintiff's payment of $79,587.74 for labor and materials is due. Second, this claim amount is readily ascertainable by computation. Third, Plaintiff has made demands to Defendant to pay this balance. Accordingly, the Court finds an award of pre-judgment interest is appropriate. The

parties have no prior agreement as to the prejudgment interest rate; therefore, the prejudgment interest rate is nine percent per year pursuant to RSMo. §§ 408.020. The prejudgment interest rate is calculated using the principal amount of $79,587.74 beginning the day payment was due, February 6, 2017[2], until the date of entry of this Order.

RSMo. § 408.040 governs post-judgment interest. The post-judgment interest rate begins to run when judgment is entered by the court and continues to run until payment is made. *Id* at 314. In the absence of an agreement concerning the post-judgment interest rate, the default post-judgment interest rate of nine percent per annum as provided in RSMo. § 408.040 applies. *Id.* The post-judgment interest rate calculation shall include the principal, prejudgment interest, and all costs and fees. RSMO. § 408.040.1. "Judgment shall accrue interest on the judgment balance . . . . [t]he 'judgment balance' is defined as the total amount of the judgment awarded on the day judgment is entered, including, but not limited to, principal, prejudgment interest, and all costs and fees." RSMo. § 408.040.1.

The Court finds that Plaintiff is entitled to post-judgment interest. The parties have no prior agreement as to the post-judgment interest rate; therefore, the post-judgment interest rate is 9 percent per year pursuant to RSMo. §§ 408.040. Post-judgment interest shall accrue on the judgment balance as defined in RSMo. § 408.040.1 beginning the date of entry of this Order and continuing until full payment is made.

---

[2] The Court notes Plaintiff appears to use two different dates from which to calculate interest. In Plaintiff's Amended Complaint (Doc. 42), Plaintiff states the date to calculate interest begins on "February 6, 2017 March 29, 2017." However, Plaintiff's Proposed Entry of Default (Doc. 55) and Supplement (Doc. 57) refer to February 6, 2017, as the interest calculation date. Therefore, the Court will use February 6, 2017, as the interest calculation date.

**IV. Conclusion**

Accordingly, it is **ORDERED**, **ADJUDGED**, and **DECREED** that:

(1) Plaintiff's Motion for Default Judgment (doc. 55) is **GRANTED**;

(2) Default judgment pursuant to Rule 55(b)(2) is in entered in favor of Plaintiff Missouri Drywall Supply, Inc. and against Defendant Commercial Drywall Corporation;

(3) The principal owed to Plaintiff is $79,587.74;

(4) Defendant shall pay prejudgment interest to Plaintiff, and prejudgment interest shall be calculated at the statutory rate of 9 percent per annum beginning February 6, 2017, until the date of entry of this Order;

(5) Defendant shall pay post-judgment interest to Plaintiff, and post-judgment interest shall be calculated at the statutory rate of 9 percent per annum beginning the date of entry of this Order and continuing until this judgment is satisfied; and

(6) Costs are to be taxed against Defendant Commercial Drywall.

**IT IS SO ORDERED.**

                                              s/ Roseann A. Ketchmark
                                              ROSEANN A. KETCHMARK, JUDGE
                                              UNITED STATES DISTRICT COURT

DATED:  February 7, 2019